**J. H. ROSE TRUCK LINE, INC.**
v.
The **UNITED STATES.**
Nos. 194–69, 28–70.

United States Court of Claims.

July 14, 1972.

Bernard H. English, Fort Worth, Tex., for plaintiff. James M. Doherty, attorney of record. Doherty & Robertson, Austin, Tex., of counsel.

John C. Ranney, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

OPINION

PER CURIAM:

These cases were referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on September 27, 1971. Exceptions to the commissioner's opinion and report were filed by both parties and the case has been submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the report of the commissioner with a few modifications, it hereby adopts the same, as modified by the court, as the basis for its judgment in these cases, as hereinafter set forth. Therefore, plaintiff is entitled to recover on its expedited service claims (1), (4), (6), (7), (9)–(12), (16), (18)–(21), (23), (25)–(27), (29), (30), (32), (33), (35), (38), (39), (41), (42), (44), and (48) set out in subparagraph (b) of paragraph VI of the petition in case No. 194–69; on its expedited service claims (2), (3), and (11) set out in subparagraph (b) of paragraph VI of the petition in case No. 28–70; on its volume shipment claims (1)–(25) and (31)–(38) set out in paragraph XII of the petition in case No. 194–69; and on its volume shipment claims (18)–(22) set out in paragraph XII of the petition in case No. 28–70; and judgment is entered to that effect, with the amounts of the recoveries to be determined in further proceedings pursuant to Rule 131(c).

Plaintiff is not entitled to recover on the remaining claims asserted in the present litigation, and the respective petitions are dismissed as to such claims.

Commissioner White's opinion, with a few modifications by the court, is as follows:

These two cases were tried jointly, because they not only involve the same plaintiff but they also involve common questions of fact and law. The basic issues to be decided by the court in each of the two cases have generally been referred to as "the expedited service issue" and "the volume shipment issue."

## I. The Expedited Service Issue

A. *Introduction.* There are 48 shipments in case No. 194–69 and 14 shipments in case No. 28–70 which involve the expedited service issue. With respect to these shipments, the plaintiff computed and collected charges under Item 120 of its Tender No. 50, I.C.C. No. 85, or under Item 230 if its Tariff 2–E, MF–I.C.C. No. 15, on the basis that it allegedly had been requested to perform, and had performed, expedited service or high-speed transportation in connection with such shipments. The defendant subsequently assessed and recouped alleged overcharges on the theory that the plaintiff had not been requested to perform, and had not performed, expedited service or high-speed transportation in connection with the 62 shipments that involve this issue.

Item 120 of the plaintiff's Tender No. 50, I.C.C. No. 85, and Item 230 of the plaintiff's Tariff 2–E, MF–I.C.C. No. 15, provided in similar language at times material to this litigation that whenever a shipper or consignee requested that a shipment be given expedited service or high-speed transportation, the movement would be subject to a minimum charge based on not less than 20,000 pounds for each vehicle used, at the rate applicable to a 20,000-pound shipment of the commodity or commodities transported. The two items further provided in similar language that each bill of lading on such a shipment should be marked or stamped "Expedited Service," or "High-Speed Transportation," or "Priority 1, 2, 3, or 4," or "any other annotation * * * such as a definite deadline delivery date requiring expedited service or high-speed transportation in order to meet such deadline delivery date."

None of the Government bills of lading involved in the present litigation was marked or stamped with the term "Expedited Service" or with the term "High-Speed Transportation"; and there is no evidence in the record relative to the making by the defendant of a specific request that any particular shipment be accorded expedited service or high-speed transportation.

On the other hand, the evidence in the record shows that 44 of the bills of lading involved in the litigation were marked or stamped to indicate that they covered priority 1, 2, or 3 consignments, that two of the bills of lading were marked or stamped to show that they covered priority 4 consignments, that 11 of the bills of lading were marked or stamped with annotations referring to deadline dates, and that five of the bills of lading did not bear any of the annotations specified in the plaintiff's Item 120 or Item 230.

B. *Priority 1, 2, and 3 Consignments.* Sometime before the happening of the events which gave rise to the present litigation, the Department of Defense adopted a Uniform Materiel Issue Priority System, which is a system of priorities for the handling throughout the entire procurement cycle, including transportation, of requisitioned items as to which there is an element of urgency in relation to the mission of the requisitioning activity. The system involves the furnishing by the requisitioning activity of an issue priority designator ("IPD") in connection with each such requisition. The issue priority designators range from 1 through 20; and the higher the number, the lower the priority.

The Uniform Materiel Issue Priority System provides for the assignment of a transportation priority ("TP") to any material requisitioned with an issue priority designator; and transportation of-

ficers are guided by the assigned transportation priorities in selecting appropriate modes of transportation for such material. For example, material requisitioned with issue priority designator 1, 2, or 3 is assigned TP 1. The preferred mode of transportation for TP 1 material is airlift, but TP 1 material may be transported by other high-speed modes when its size or other characteristics— or when good traffic management—indicate airlift to be inappropriate or unnecessary. However, some type of high-speed transportation is desired on a TP 1 shipment.

On March 12, 1962, a seminar for persons involved in the transportation of military goods was held in Atlanta, Georgia, and the plaintiff's general manager was in attendance. During the course of the seminar, the plaintiff's general manager heard—and received a mimeographed copy of—an address by Major General I. Sewell Morris, Commander of the Defense Traffic Management Service, Department of Defense, in which General Morris (among other things) explained the Uniform Materiel Issue Priority System, and indicated that the system contemplated a general speed-up of transportation procedures and operations, both military and commercial. General Morris said that each Government bill of lading involved in the system would show a priority number; and that although the priority number would not be of direct interest to the carrier transporting the shipment, it would furnish an indication as to the urgency of the shipment and could be converted into a time factor. There was attached to the mimeographed copy of General Morris' address a time chart which indicated that if issue priority designator 1, 2, or 3 appeared on a bill of lading, the maximum amount of time (including in-transit time) allowed for the movement would be 5 days or 7 days, depending on whether the material was consigned to a point in the continental United States or overseas.

After the plaintiff's general manager attended the seminar that is mentioned in the preceding paragraph, the plaintiff promulgated Item 120 of its Tender No. 50, I.C.C. No. 85, and Item 230 of its Tariff 2–E, MF–I.C.C. No. 15, mentioned earlier in this opinion.

During the period subsequent to March 12, 1962, the plaintiff often received complaints from the defendant when the plaintiff (for reasons not explained in the record) failed to provide high-speed transportation meeting the defendant's standard in connection with shipments requiring such transportation under the Uniform Materiel Issue Priority System.

The facts previously summarized show that the 44 priority 1, 2, or 3 consignments involved in the present litigation were regarded by the defendant as transportation priority 1 shipments requiring high-speed modes of transportation in order to effect delivery within a certain maximum time period (including in-transit time), and that the plaintiff was aware of the defendant's desire for high-speed transportation when it received such shipments for handling.

The evidence further shows that the plaintiff met the defendant's standard for high-speed transportation, and thus is entitled to recover, with respect to 24 of the transportation priority 1 shipments involved in case No. 194–69 and three of the TP 1 shipments involved in case No. 28–70. These instances are referred to in subparagraphs (1), (4), (6), (7), (9)–(12), (16), (18), (20), (21), (23), (25)–(27), (29), (30), (32), (35), (38), (39), (41), and (48) of paragraph (a) of finding 11, and in subparagraphs (2), (3), and (11) of paragraph (a) of finding 12. (The subparagraph numbers in paragraph (a) of finding 11 match the claim numbers in subparagraph (b) of paragraph VI of the petition in case No. 194–69; and the subparagraph numbers in paragraph (a) of finding 12 match the claim numbers in subparagraph (b) of paragraph VI of the petition in case No. 28–70.)

On the other hand, the evidence shows that the plaintiff failed to meet the de-

fendant's standard for high-speed transportation, and is not entitled to recover, with respect to 15 of the transportation priority 1 shipments in case No. 194–69 and two of the TP 1 shipments in case No. 28–70. These instances are referred to in subparagraphs (5), (14), (15), (17), (22), (24), (28), (34), (36), (37), (43), and (45)–(47) of paragraph (a) of finding 11, and in subparagraphs (1) and (4) of paragraph (a) of finding 12.

C. *Priority 4 Consignments.* As stated earlier in this opinion, the Government bills of lading on two of the shipments involved in the present litigation were marked or stamped to show that they related to issue priority designator 4 consignments. Under the Uniform Materiel Issue Priority System, material requisitioned with issue priority designator 4, 5, 6, 7, or 8 is assigned transportation priority 2 and is to be moved by an appropriate mode of transportation, which will assure delivery within the requirements of the required delivery date. The time chart which was furnished to the plaintiff's general manager on March 12, 1962, indicated that if issue priority designator 4, 5, 6, 7, or 8 appeared on a Government bill of lading, the maximum amount of time (including in-transit time) allowed for the movement would be 8 days or 15 days, depending on whether the material was consigned to a point in the continental United States or overseas. Thus, the plaintiff was aware that IPD 4 material did not have a top transportation priority requiring high-speed transportation. Under Items 120 and 230 a request (express or implied) from the shipper or consignee for expedited service or high-speed transportation in connection with a shipment was a prerequisite for the assessment of charges under the pertinent item.

The available facts concerning the two IPD 4 consignments involved in the present litigation are set out in subparagraphs (2) and (40) of paragraph (a) of finding 11. It will be noted that the plaintiff did not provide high-speed transportation, meeting the defendant's standard, for either of the two shipments.

It follows, therefore, that the plaintiff is not entitled to recover with respect to the two IPD 4 consignments, since the defendant did not request, and the plaintiff did not provide, expedited service or high-speed transportation in connection with such shipments.

D. *Consignments Involving Deadline Dates.* The Government bills of lading on 11 of the shipments involved in the present litigation were marked or stamped with annotations indicating deadline dates for the delivery of the respective shipments.

For example, the bills of lading covering the shipments referred to in subparagraphs (31), (33), (42), and (44), of paragraph (a) of finding 11 were marked or stamped "RDD," followed by a date in each instance. The symbol RDD is an abbreviation for "Required Delivery Date," and it is placed on a Government bill of lading, with a date, by the origin transportation officer to signify that the material must be delivered not later than the date indicated.

Under the defendant's standard for the furnishing of high-speed transportation, as discussed in subpart B of this part I of the opinion, the required delivery date fixed by the defendant with respect to the shipment mentioned in subparagraph (42) of paragraph (a) of finding 11 required the plaintiff to furnish, and the plaintiff did furnish, high-speed transportation in order to meet the defendant's deadline. Accordingly, the plaintiff is entitled to recover on this shipment.

On the other hand, the plaintiff did not meet the required delivery dates fixed by the defendant with respect to the shipments mentioned in subparagraphs (31) and (33) of paragraph (a) of finding 11. Consequently, the plaintiff is not entitled to recover on these two shipments.

Subparagraph (44) of paragraph (a) of finding 11 relates to a shipment, having a total weight of 13,530 pounds,

from Sheppard Air Force Base, Texas, to Oakland, California, a distance of about 1,622 miles. It was tendered by the defendant to the plaintiff on October 16, 1964, with annotations of "RDD:22 Oct 64)) and "PRI 2" on the bill of lading. The shipment was delivered by the plaintiff 3 days later. Although the required delivery date was 6 days later than the date on which the shipment was tendered to the plaintiff, the annotation "PRI 2" on the bill of lading was an indication that this was a shipment with a top transportation priority, for which the defendant desired high-speed transportation, and the plaintiff actually provided such transportation by moving the shipment over a distance of 1,622 miles in 3 days' time. Accordingly, it is my opinion that the plaintiff is entitled to recover on this shipment.

The Government bills of lading on the shipments mentioned in subparagraph (19) of paragraph (a) of finding 11 and in subparagraphs (5)–(10) of paragraph (a) of finding 12 were each marked or stamped with the annotation "Deadline Date at Port" or "D/L at Port," followed by a date.

There is evidence in the record presented on behalf of the defendant and indicating that "Deadline Date at Port" or "D/L at Port" is not officially authorized as part of the Defense Department's transportation terminology, but that it is used sometimes by Defense Department personnel on transportation documents as the equivalent of the authorized term, "Desired Delivery Date" or "D.D.D." When the symbol D.D.D., with a date, is placed on a Government bill of lading by the origin transportation officer, it signifies the date by which delivery of the material is desired. On the other hand, testimony on behalf of the plaintiff indicated that the plaintiff understood the annotation "Deadline Date at Port" or "D/L at Port" as the equivalent of a *required* delivery date; and such an understanding seems reasonable in view of the dictionary meaning of the word "deadline," *i. e.*, "any fixed limit" (Webster's New International Dictionary (Second Edition, Unabridged, 1955)).

The shipment referred to in subparagraph (19) of paragraph (a) of finding 11 had a total weight of 15,907 pounds, and it was from Defense, Texas, to Oakland, California, a distance of about 1,874 miles. It was tendered by the defendant on July 8, 1964, and the Government bill of lading was marked or stamped "Deadline Date at Port 12 July 64." In view of the distance over which the shipment was to be moved, a delivery within 4 days in order to meet the defendant's deadline would obviously require handling of a type that met the defendant's standard for high-speed transportation. The plaintiff actually provided such transportation by offering the shipment for delivery in Oakland 3 days after it was received. Accordingly, it is my opinion that the plaintiff is entitled to recover on this shipment.

Subparagraphs (5)–(8) of paragraph (a) of finding 12 relate to shipments of passenger automobiles from Defense, Texas, to New Orleans, Louisiana, a distance of about 402 miles. In each instance, the Government bill of lading was marked or stamped "Deadline Date at Port" or "D/L at Port," followed by a date which was 6 days later than the date on which the particular shipment was tendered to the carrier. In view of the relatively short distance of 402 miles over which these shipments were to be transported, the time allowance of 6 days was a plain indication to the carrier that the defendant did not need or desire high-speed transportation. Therefore, although the plaintiff actually delivered one shipment the next day after it was received, and delivered the other shipments 2 days after they were received, it is my opinion that the plaintiff is not entitled to recover on these four shipments, in the absence of any request for expedited service or high-speed transportation from the shipper or consignee. Such a request was an essential predicate for the assessment of a proper charge under Item 120 or Item 230.

The shipments referred to in subparagraphs (9) and (10) of paragraph (a) of finding 12 involved the movement of passenger automobiles from Defense, Texas, to Oakland Army Terminal, California, a distance of about 1,874 miles. Each of these shipments was tendered to the carrier on September 3, 1964, and the Government bill of lading in each instance was marked or stamped "Deadline Date at Port 11 Sep 64." Here, again, the circumstance that the defendant allowed 8 days for the movement indicated that these were not shipments having a top transportation priority, and that the defendant did not need or require high-speed transportation. Therefore, although the plaintiff effected delivery of each shipment within 5 days, it is my opinion that the plaintiff is not entitled to recover, since delivery within the comparatively short period was not requested by the shipper or consignee. As previously stated, such a request was essential to the making of a valid charge under Item 120 or Item 230.

E. *Other Shipments.* The evidence in the record indicates that the Government bills of lading on the shipments referred to in subparagraphs (8) and (13) of paragraph (a) of finding 11, and on the shipments referred to in subparagraphs (12)–(14) of paragraph (a) of finding 12, were not marked or stamped with any of the annotations which, according to Item 120 or Item 230, the plaintiff would regard as a request for expedited service or high-speed transportation. Furthermore, there is no other evidence in the record indicating that the defendant, either expressly or by implication, requested expedited service or high-speed transportation in connection with such shipments.

■ The Government bill of lading on the shipment referred to in subparagraph (13) of paragraph (a) of finding 11 was marked or stamped with the symbol "T/PRI 2," indicating that this was a transportation priority 2 shipment. Under the Defense Department's Uniform Materiel Issue Priority System, material requisitioned with issue priority designator 4, 5, 6, 7, or 8 is assigned transportation priority 2 and is moved by means of an appropriate mode of transportation, which will assure delivery within the requirements of the required delivery date. The time chart which the plaintiff's general manager received on March 12, 1962, indicated that the maximum amount of time (including in-transit time) allowed for the movement of such a shipment would be 8 days or 15 days, depending on whether the material was consigned to a point in the continental United States or overseas. Therefore, the appearance of "T/PRI2" on the bill of lading now under consideration could not reasonably have been construed by the plaintiff as a request for expedited service or high-speed transportation. The same is true of the shipment referred to in subparagraph (3) of finding 11(a), which was annotated "PRI 3, not a request for expedited service or high-speed transportation."

■ The Government bill of lading on the shipment mentioned in subparagraph (8) of paragraph (a) of finding 11 was marked or stamped "TP:3," indicating that this was a transportation priority 3 shipment. The Defense Department's Uniform Materiel Issue Priority System provided for TP 3 to be assigned to material requisitioned with issue priority designator 9, 10, 11, 12, 13, 14, or 15. The time chart on which plaintiff placed reliance indicated that the maximum amount of time (including in-transit time) allowed for the movement of such a shipment would be 20 days or 45 days, depending on whether the material was consigned to a point in the continental United States or overseas. Obviously, the annotation "TP:3" could not reasonably have been construed by the plaintiff as a request for expedited service or high-speed transportation.

■ The Government bills of lading on the shipments referred to in subparagraphs (12)–(14) of paragraph (a) of finding 12 were each marked or stamped

with the annotation "TP :4," indicating that each of these shipments was a transportation priority 4 shipment. Under the Uniform Materiel Issue Priority System, material requisitioned with issue priority designator 16, 17, 18, 19, or 20 is assigned transportation priority 4 (*i. e.*, the lowest possible TP). The time chart on which the plaintiff placed reliance indicated that the maximum amount of time (including in-transit time) allowed for the movement of such a shipment would be 30 or 60 days, depending on whether the material was consigned to a point in the continental United States or overseas. Hence, there was no reasonable basis on which the plaintiff could have regarded these TP 4 annotations as being requests for expedited service or high-speed transportation.

Therefore, the plaintiff is not entitled to recover on the shipments discussed in this subpart E, since there was no request from the shipper or consignee for expedited service or high-speed transportation in connection with any such shipment.

## II. The Volume Shipment Issue

The volume shipment issue arose in connection with 44 truckloads of material that are involved in case No. 194–69 and 132 truckloads of material that are involved in case No. 28–70. Each truckload was covered by a separate Government bill of lading; and the plaintiff treated each movement under each bill of lading as constituting a separate shipment for the purpose of computing and collecting a charge for the transportation. Subsequently, the defendant assessed and recouped alleged overcharges on the theory that none of these bills of lading covered a separate shipment, but that each bill of lading should have been grouped with an additional bill or bills as together covering a single volume shipment for the purpose of computing and collecting a transportation charge on the basis of the volume rate applicable to the shipment.

The plaintiff relied, and still relies, on Item 270 of its Tender No. 50, I.C.C. No. 85, on the reissue of the same item in the plaintiff's Tender No. 50A, I.C.C. No. 101, and on Item 560 of the plaintiff's Tariff 2–E, MF–I.C.C. No. 15. These items provided in similar language as follows:

### DEFINITION OF A SHIPMENT

Except as otherwise provided, a shipment is a lot of freight received from one shipper at one point of origin at one time, for one consignee at one destination, and covered by one bill of lading. * * *

On the other hand, the defendant contends that the transactions involving the volume shipment issue should be governed by paragraph 214013 of DSAR Regulation 4500.3. This paragraph covers volume shipments of military goods which require the use of two or more units of transportation equipment. It provides in part that when such a volume shipment "is tendered to a carrier at one time as available for transportation, and more than one bill of lading is required to provide the necessary evidence of receipt by the carrier, delivery to consignee, and other data, each bill of lading so issued, will, for the purpose of protecting the volume rate which applies, be cross-referenced to indicate clearly that it covers a portion of a volume shipment subject to the volume rate which applies to the entire shipment."

In case No. 194–69, the parties have agreed that the plaintiff is entitled to recover $2,228.26 on the first 25 volume shipment claims involved in that case. Thus, 19 volume shipment claims remain for disposition in case No. 194–69. All 132 of the volume shipment claims in case No. 28–70 must be disposed of by judicial action.

Most of the volume shipment claims remaining for disposition arose out of situations in which a military installation issued two or more Government bills of lading to the same carrier on the same day to cover the movement to the same consignee at the same location of a

quantity of material requiring a number of vehicles corresponding to the number of bills of lading, with the first bill in the series stating that it was the 1st bill of lading issued to cover a portion of a volume shipment, with each other bill in the series indicating its proper place in the sequence (2d bill, 3rd bill, etc.) and containing a cross-reference to the bill or bills preceding it, and with the last bill in the series containing the statement that it was the final bill of lading issued to cover the remainder of a volume shipment.

In a situation such as that described in the preceding paragraph, the carrier knew that the entire quantity of material was tendered as a single volume shipment, irrespective of the number of bills of lading issued by the shipping installation on the particular shipment. The carrier also knew that the defendant was asking it to transport the entire quantity as a single volume shipment and subject to the applicable volume rate. By accepting the material for transportation under such circumstances, the plaintiff impliedly agreed to handle it on the basis thus indicated by the defendant in its tender. Accordingly, the plaintiff is now bound by its agreement and is estopped from asserting that such agreement was inconsistent with its own tariff definition of the term "shipment." It necessarily follows that the plaintiff is not entitled to recover on the volume shipment claims which arose out of transactions that fitted the factual pattern outlined in the preceding paragraph.

Several of the transactions that are involved in the volume shipment phase of the present litigation fitted the factual situation previously described, except that the pertinent bills of lading were not issued on the same day. The transactions in this category are referred to in subparagraph (2) of paragraph (b) of finding 15, and in subparagraphs (2)–(12) of paragraph (c) of finding 15. It should be noted, in connection with this problem, that paragraph 214013 of DSAR Regulation 4500.3, on which the defendant relies, was applicable to a volume shipment which (among other things) was "tendered to a carrier *at one time* as available for transportation" (emphasis supplied).

With respect to the several truckloads of material referred to in each of the finding 15 subparagraphs cited in the preceding paragraph of this opinion, the record does not contain any direct evidence on the question of whether the material was or was not tendered to the carrier "at one time as available for transportation." We merely know that the several bills of lading were not all issued on the same day. This, of course, does not preclude the possibility that all of the material may have been tendered to the carrier at one time as available for transportation, but the carrier was unable to provide the required number of vehicles at that time, with the result that the bills of lading were issued on the respective days when the equipment became available for the transportation of the material. As the plaintiff is seeking to recover in the present litigation, it was the plaintiff's responsibility to provide the court with evidence upon which it could be determined that, in each of the situations now under consideration, the material was not tendered to the carrier at one time as available for transportation. Since the bills of lading which pertain to each of the transactions indicate that the entire quantity of material was tendered by the defendant to the plaintiff as a single volume shipment, and that the defendant therefore impliedly asked the plaintiff to transport the entire quantity subject to the applicable volume rate, it must be concluded under the circumstances that the plaintiff, by its conduct, agreed to handle the material on the basis proposed by the defendant, even though the bills of lading were not all issued on the same date.

Accordingly, the plaintiff is not entitled to recover on the volume shipment claims discussed in the two immediately preceding paragraphs.

Certain of the volume shipment claims arose out of situations that were somewhat different from any of those previously discussed in the opinion. One of these unusual situations is described in subparagraph (1) of paragraph (b) of finding 15. The defendant issued three Government bills of lading on February 14, 1966, four on February 15, 1966, and one on February 16, 1966, to cover the movement of guns from Ft. Chaffee, Arkansas, to Ft. Sill, Oklahoma. The bills were numbered C–4327136–40 and C–4327261–63. None of the first five bills of lading contained any sort of reference to any other bill in the series. However, the sixth bill stated that it was the 6th bill, and contained a cross-reference to the five preceding bills; the seventh bill stated that it was the 7th bill, and contained a cross-reference to the six preceding bills; and the eighth bill stated that it was the final bill, and contained a cross-reference to the seven preceding bills.

Paragraph 214013 of DSAR Regulation 4500.3 contained precise instructions as to how a carrier was to be notified that a shipment requiring two or more vehicles, and multiple bills of lading, was being tendered as a volume shipment subject to the applicable volume rate. It declared that the first bill of lading should bear the annotation, "First bill of lading issued to cover portion of volume shipment tendered carrier [on a specified date] comprising approximately [a specified number of] pounds"; that the second (and each succeeding) bill of lading should bear the annotation, "Second [or other appropriate number] bill of lading issued to cover portion of volume shipment tendered carrier [on a specified date] comprising approximately [a specified number of] pounds, the first part of which moved on bill[s] of lading No[s] [followed by the number or numbers of the preceding bill or bills]"; and that the final bill should bear the annotation, "Final bill of lading issued to cover remainder of a volume shipment tendered carrier [on a specified date] comprising [a specified num-

ber of] pounds, the first part of which moved on bill[s] of lading No[s] [followed by the number or numbers of the preceding bill or bills]." The applicable regulation was not followed in the transaction referred to in the preceding paragraph; and the plaintiff was not put on notice that it was being tendered a large quantity of guns which it was expected to transport as a single volume shipment at the applicable volume rate. Accordingly, it is my opinion that the plaintiff is entitled to recover on its volume shipment claims which grew out of such transaction. (Claims 31–38 in paragraph XII of the petition in case No. 194–69.)

Another unusual situation is described in subparagraph (1) of paragraph (c) of finding 15. The defendant issued one Government bill of lading on October 25, 1965, two on October 26, 1965, one on October 28, 1965, and one on October 29, 1965, each covering the movement of two vehicles from Tooele Army Depot, Utah, to Lake City, Missouri. The first bill of lading, C–7804427, did not contain any indication that it was related in any way to the other bills mentioned in the preceding sentence. However, the second bill stated that it was the 2nd bill, and contained a cross-reference to C–7804427; the third bill stated that it was the 3rd bill, and contained a cross-reference to the two other bills previously mentioned; the fourth bill stated that it was the 4th bill, and contained a cross-reference to the three bills previously mentioned; and the fifth bill stated that it was the final bill to cover a volume shipment, and contained a cross-reference to C–7804427.

In view of the defendant's failure, under the circumstances outlined in the preceding paragraph, to comply with the provisions of paragraph 214013 of DSAR Regulation 4500.3 by putting the plaintiff on notice at the time of the issuance of the first bill of lading on October 25, 1965, that the defendant was tendering a number of vehicles, which it expected the carrier to transport as a single volume shipment at the volume

rate, it is my opinion that the plaintiff is entitled to recover on its claims which grew out of the transaction now under consideration. (Claims 18–22 in paragraph XII of the petition in case No. 28–70.)

By way of summarizing the results of the discussion in part II of this opinion, the parties have agreed that the plaintiff is entitled to recover on the first 25 of its volume shipment claims in case No. 194–69, and it is my opinion that the plaintiff is entitled to recover on eight additional volume shipment claims in case No. 194–69 and on five volume shipment claims in case No. 28–70. The plaintiff is not entitled to recover on the other 11 volume shipment claims in case No. 194–69, or on the other 127 volume shipment claims in case No. 28–70.